## Richmond

LARRY EDWIN PATTERSON

V.

COMMONWEALTH OF VIRGINIA

October 16, 1981.

Record No. 801290.

Present: All the Justices.

*Philip S. Marstiller (Sally Yates Wood; Thomas & Sewell, P.C.,* on briefs), for appellant.

*Jerry P. Slonaker, Assistant Attorney General (Marshall Coleman, Attorney General; Vera S. Warthen, Assistant Attorney General,* on brief), for appellee.

CARRICO, C.J., delivered the opinion of the Court.

A jury below convicted the defendant, Larry Edwin Patterson, of rape and abduction. In accordance with the jury's verdicts, the trial court sentenced the defendant to serve a total of 25 years in the penitentiary. We granted the defendant an appeal confined to the question whether the trial court improperly limited the use of a preliminary hearing transcript in the defense effort to impeach the prosecutrix' testimony.

In her testimony, the prosecutrix stated that about 2:00 a.m. on October 10, 1979, she was awakened by the barking of her dog. When she went downstairs to investigate, a masked man jumped from behind the basement door and grabbed her. He bound and blindfolded her and took her upstairs to her bedroom. In the course of the next 24 hours, he forced her to engage in a variety of sexual acts. At one point, the blindfold slipped from the prosecutrix' eyes, and she recognized the defendant as her assailant. She testified she knew him, but only slightly, before the incident in question.

Testifying in his own behalf, the defendant claimed a closer prior relationship with the prosecutrix than she had acknowledged in her testimony. With respect to the occasion in question, the defendant stated that the prosecutrix invited him into her home and voluntarily engaged in sexual acts with him.

The issue concerning the use of the preliminary hearing transcript arose during the course of defense counsel's cross-examination of the prosecutrix. In an effort to show that the prosecutrix had made statements at the preliminary hearing inconsistent with her trial testimony, defense counsel began reading from the transcript. At this point, the trial judge told counsel: "You cannot read a transcript. You may phrase the question but not [read] from the transcript." When defense counsel later read from the transcript, the trial judge repeated his admonition, adding: "[The transcript] has not been verified, nor has it been authenticated by any authority, and you are not a witness in the case."

In a discussion out of the hearing of the jury, defense counsel represented to the court that the transcript had been prepared from notes taken by a court reporter present at the preliminary hearing. The trial judge persisted in his view that the transcript had not been properly authenticated. At the end of the discussion, defense counsel summarized his understanding of the court's ruling in these words:

> It is my understanding . . . that I cannot refer to any statements verbatim or read any questions verbatim that appear in [the] transcript, but on the other hand I may paraphrase the question that I ask for impeachment purposes.
>
> [I]f I understand further the Court's ruling . . . at the appropriate time I can use . . . the court reporter . . . to testify either from her original notes or testify by reading [the] transcript as to any inconsistencies that appear between the [preliminary] hearing and this trial.

The trial judge responded to counsel's summary by stating that, if it "[lay] the proper foundation," the defense could show by evidence "there [had] been a prior inconsistent statement."

Defense counsel continued with his cross-examination of the prosecutrix, attempting to show that in 12 instances she had made statements at the preliminary hearing inconsistent with her trial testimony. The witness admitted some prior inconsistent statements, explained others, and said she could not recall making the remainder. The defense then called the court reporter who testified she had taken the testimony at the preliminary hearing and had signed the transcript, certifying its accuracy. Through the reporter, the defense showed that the prosecutrix had made several statements at the preliminary hearing inconsistent with her trial testimony.

The defendant argues that the trial court "erred in having ruled that for impeachment purposes [defense] counsel could not read from any portion of the preliminary hearing transcript," thus requiring the defense to call the court reporter "to testify in order to introduce into evidence the prosecutrix' prior inconsistent statements made at the preliminary hearing." The defendant maintains that once defense counsel had warned the prosecutrix of the thrust of his inquiry, asked whether she had made the alleged inconsistent statements, and received her denial of the statements, counsel

should have been permitted to introduce the prior inconsistent statements into evidence by reading from the transcript. This procedure, the defendant says, is clearly prescribed by our holding in *Hodges v. Commonwealth,* 213 Va. 316, 191 S.E.2d 794 (1972).

■ In *Hodges,* defense counsel attempted to impeach a Commonwealth witness by offering in evidence the entire transcript of testimony taken at a preliminary hearing. The trial court refused to admit the transcript. We held the refusal was not error because counsel had not followed proper impeachment procedure. In the course of our opinion, we said:

> Out of the presence of the jury, the trial court carefully outlined to counsel the procedure to be followed in proving prior inconsistent statements. Questions were to be propounded to the witness, and if his answers differed from those given to the same questions in the transcript, *that portion of the transcript could be read.* If the witness denied having made the answers appearing in the transcript a witness could be used to prove that he had answered as reported in the transcript. This impeachment procedure was correct and proper. [Emphasis added.]

213 Va. at 319, 191 S.E.2d at 796.

The defendant seizes upon the italicized language in the above quotation to support his argument that, once the prosecutrix denied having made prior statements inconsistent with her trial testimony, defense counsel should have been permitted to introduce the prior inconsistent statements into evidence by reading from the preliminary hearing transcript. We disagree with the defendant.

■ We do not believe the language in the quotation from *Hodges* was intended to give counsel a license to read *into evidence* a witness' prior inconsistent statement. If granted this leeway, counsel "in effect [would be] testifying as to what the witness had said at the former trial," a practice clearly impermissible. *Wade v. Peebles,* 162 Va. 479, 498, 174 S.E. 769, 776 (1934).

We are of opinion that the italicized language from *Hodges* was intended to permit counsel, in asking a witness whether he or she previously made a particular statement, *to frame the question* by reading the statement from a transcript of a prior proceeding. If

the witness denies or is unable to recall having made the statement, counsel must then prove the statement actually was made.

■ It is one thing, however, to say that counsel may read a witness' prior statement from a transcript in framing a question and quite a different matter to say that the mere reading constitutes proof the statement actually was made. Once the witness denies or is unable to recall having made the prior inconsistent statement, the proper procedure, as indicated by the sentence following the italicized language in the *Hodges* quotation, is to use another witness to prove the first witness had testified as reported in the transcript. In the present case, the court reporter was readily available to the defendant to supply the necessary proof.

The trial court did not err, therefore, in its ruling requiring proof of the prior inconsistent statements in a manner other than by defense counsel's reading from the transcript. There remains, however, the defendant's complaint that the court erred in refusing to permit defense counsel to read from the preliminary hearing transcript when inquiring of the prosecutrix whether she had been asked a particular question at the earlier hearing.

■ We believe this refusal was error. We can perceive no logical reason for requiring counsel to paraphrase a question propounded in a prior proceeding when the question can be more accurately called to the witness' attention by reading from a transcript of the proceeding.

It does not follow, however, that this error mandates reversal. It is obvious from the record that, in his attempted impeachment of the prosecutrix, defense counsel had no difficulty paraphrasing those questions he used from the preliminary hearing transcript. The defendant says now that, if the trial court had not ruled as it did, he would have introduced evidence of other inconsistencies between the prosecutrix' preliminary hearing statements and her trial testimony. We have examined all the questions asked the prosecutrix at the preliminary hearing, and we find that all could have been paraphrased easily. Therefore, the error in refusing to permit counsel to read the questions from the transcript was harmless.

For the reasons assigned, the judgment of the trial court will be affirmed.

*Affirmed.*