COURT OF APPEALS OF VIRGINIA


Present:  Judges Willis, Annunziata and Senior Judge Cole
Argued at Richmond, Virginia


LISA THOMASINE WALLER

v.          Record No. 0077-95-2          OPINION BY
                                 JUDGE JERE M. H. WILLIS, JR.
COMMONWEALTH OF VIRGINIA                MARCH 12, 1996


          FROM THE CIRCUIT COURT OF LANCASTER COUNTY
                Dixon L. Foster, Judge Designate

          William R. Curdts (Dunton, Simmons, & Dunton,
          on briefs), for appellant.

          Margaret Ann B. Walker, Assistant Attorney
          General (James S. Gilmore, III, Attorney
          General, on brief), for appellee.


     On appeal from her conviction for distribution of cocaine,

Lisa Thomasine Waller contends that the trial court erred (1) in

refusing to allow her to cross-examine a prosecution witness

concerning a prior inconsistent statement, and (2) in refusing to

admit into evidence the transcript of a prosecution witness's

inconsistent statements at a previous trial.  We agree and

reverse the judgment of the trial court.

     On July 17, 1993, at 8:00 p.m., Michael Conway, a volunteer

working for the Lancaster County drug task force, met with Deputy

United States Marshal Larry Clarke to purchase drugs.  The two

men stopped outside a house in a residential area off Wiggins

Road.  They saw Hilton Laws sitting on the side of the road and

Waller's car in the driveway.  Conway asked Laws where they could

buy some drugs.  Laws went to Waller.  Waller then walked over to

Conway and asked what she could do for them.  Conway said he wanted a fifty dollar rock of cocaine.  Waller walked back to her car and spoke with a man, known as "The Undertaker," who was sitting in the passenger seat.  When she returned, she handed Conway a rock of cocaine and he gave her fifty dollars.

At trial, Waller admitted she was present at the time of the sale, but she testified that someone else sold the cocaine to Conway.

## I.

Waller sought to cross-examine Conway concerning his testimony in a prior trial "that the only people that he bought from during the task force operation were black males."  Defense counsel noted that Waller was not a black male.  The trial court ruled that evidence of Conway's prior testimony was inadmissible and denied the cross-examination.  This was error.

> If a witness gives testimony that is inconsistent with a prior statement, . . . opposing counsel may cross-examine the witness as to the inconsistency.  In addition, all inconsistent portions of that prior . . . statement are admissible for impeachment purposes.

Smith v. Commonwealth, 15 Va. App. 507, 511, 425 S.E.2d 95, 98 (1992) (citations omitted).  Conway's alleged testimony on the earlier occasion that he had bought drugs only from black males was inconsistent with his testimony at trial that he had bought cocaine from Waller, who was not a black male.  Waller was entitled to cross-examine him on this subject.

On cross-examination, counsel for Waller asked Agent Clarke:

Q.   You had to make people believe that you were a user of cocaine in order to get them to sell it to you; is that right?

A.   Yes, sir.

Q.   Did you ever find yourself in the company of other people using cocaine during the course of your investigation?

A.   Yes, sir.

Waller's counsel then sought to impeach Clarke's testimony by proof that at Waller's previous trial Clarke had testified that he had not been in the presence of people who were actually using cocaine.  Defense counsel read to Clarke the following excerpt from the transcript of that previous testimony:

Q.   In fact, you were playing the role of someone who is a drug user, someone in search of drugs; is that right?

A.   Yes, sir.

Q.   And your safety depended on that.

A.   Yes, sir.

Q.   Did you ever find yourself in a position where, in order to maintain your identity, or your persona, you are in the company of people that were actually using cocaine.

A.   Were I in the presence of people actually using cocaine?

Not primarily in my presence, but suspected areas where such that they may have been inside of a house while I am outside.

But I have never been right there while cocaine was being used.

Asked whether he recalled that testimony, Clarke replied, "I

don't recall, but I tried to answer the question to the best of my recollection in a truthful manner on that day as well as today, but I don't recall using those exact words." Defense counsel then sought to introduce the transcript into evidence. The trial court ruled that counsel might cross-examine Clarke on his prior testimony, but refused to admit the transcript into evidence.

The Commonwealth contends, as a threshold matter, that the inconsistency between Clarke's testimony at Waller's trial and his testimony on the prior occasion was collateral and immaterial to any issue on trial in Waller's case, and thus could not be used by Waller to impeach Clarke. A witness may be impeached on cross-examination by proof that he has, on a prior occasion, made a statement that is inconsistent with any testimony given by him on direct examination. However, if the subject matter is raised for the first time on cross-examination and is collateral to the issues on trial, it cannot be the basis for impeachment by proof of a prior inconsistent statement. See Baltimore, C. & A. Ry. Co. v. Hudgins, 116 Va. 27, 31-32, 81 S.E. 48, 49 (1914); Simpson v. Commonwealth, 13 Va. App. 604, 606-07, 414 S.E.2d 407, 409 (1992).

The subject matter of Clarke's inconsistent statements was raised for the first time on cross-examination. However, that subject matter was not collateral to the issues on trial. "The test as to whether a matter is material or collateral, in the

matter of impeachment of a witness, is whether or not the cross-examining party would be entitled to prove it in support of his case." Maynard v. Commonwealth, 11 Va. App. 437, 445, 399 S.E.2d 635, 640 (1990) (en banc) (citation omitted). The inconsistent statements related to Clarke's conduct and the conduct of his companions during the task force operation, specifically with respect to drug dealings, and to Clarke's ability to recall that conduct. This subject matter bore directly on the validity and accuracy of Clarke's assertions against Waller and was an area that she was entitled to explore in her defense. Therefore, these statements were proper material for impeachment.

Waller contends that the trial court erred in refusing to receive the relevant portion of the transcript into evidence as proof of the prior inconsistent statement. Citing Smith v. Commonwealth, 15 Va. App. 507, 425 S.E.2d 95 (1992), and Hall v. Commonwealth, 233 Va. 369, 355 S.E.2d 591 (1987), the Commonwealth argues that because the statement was read into evidence, its proof was thereby accomplished, that admission of the written transcript thereby became unnecessary, and that the trial court did not abuse its discretion in rejecting the transcript. We disagree.

> It is fundamental to the right of cross-examination that a witness who is not a party to the case on trial may be impeached by prior statements made by the witness which are inconsistent with his present testimony, provided a foundation is first laid by calling his attention to the statement and then questioning him about it before it is introduced in evidence.

Hall, 233 Va. at 374, 355 S.E.2d at 594.

In Hall, a witness's prior inconsistent statement was read to him.  The accused then sought a cautionary instruction, informing the jury that the prior inconsistent statement could be considered only for impeachment purposes and not as proof of the substance of the statement.  The trial court refused to give the instruction, because the statement itself had not been put into evidence but merely had been recited on cross-examination.  Holding that the denial of the cautionary instruction was error, the Supreme Court said, "[t]he effect of [the recitation] on the jury was the same as if the statement had been formally introduced and the court's refusal to admit the statement in evidence is immaterial."  Id. at 375, 355 S.E.2d at 595.  This ruling held merely that the recitation of the prior inconsistent statement was proof sufficient to render erroneous the denial of a requested cautionary instruction.  Hall did not approve a refusal to accept the statement, if tendered, into evidence.

In Smith, defense counsel handed a prosecution witness a transcript of the witness's inconsistent statement given on a prior occasion and had the witness read the statement aloud.  Sustaining the Commonwealth's objection to admission of the transcript, the trial court summarized the inconsistency as follows:  "[Bradby] said he didn't implicate himself at all on the date of the arrest.  Now he is implicating himself.  The jury has that and the jury considers that and the jury makes the

decision."  Relying on <u>Hall</u>, we held:

> [T]he quoted passage above shows that the statement was <u>read</u> into evidence, even if not admitted in written form.  "The effect of that procedure on the jury was the same as if the statement had been formally introduced, and the court's refusal to admit the statement in evidence is immaterial."

>         \*     \*     \*     \*     \*     \*     \*

> The record shows the trial court determined that the jury had heard the relevant portions of the statement as it related to impeachment.  Once the jury has heard the relevant portions of the prior inconsistent statement during cross-examination, whether the written statement itself is admitted into evidence is "a distinction without a difference."  Because the trial court determined that admission of the written statement would have added nothing not already in the record, we cannot conclude that the trial court abused its discretion in refusing to admit the transcript.

<u>Smith</u>, 15 Va. App. at 512-13, 425 S.E.2d at 98-99 (citations omitted).

This case is distinguishable from <u>Smith</u>.  Where a proper foundation has been laid, challenging a witness's credibility on the basis of his having made a prior inconsistent statement, the prior inconsistent statement itself becomes admissible for impeachment purposes.  See <u>Smith</u>, 15 Va. App. at 511, 425 S.E.2d at 98.  In <u>Smith</u>, the impeached witness himself read the prior inconsistent statement into evidence.  The statement was thereby incorporated into the body of proof laid before the jury.  In this case, the reading of the statement by counsel was a mere assertion of counsel.  It did not rise to the level of testimony and, thus, was not proof of the statement.  By rejecting the relevant portion of the transcript, the trial court denied Waller

- 7 -

the opportunity to prove the inconsistent statement upon which her effort to impeach Clarke rested.

In attempting to impeach Clarke, Waller proceeded properly to frame the question by reading the statement from a transcript of a prior proceeding. If the witness denies or is unable to recall having made the statement, counsel must then prove the statement actually was made.

It is one thing, however, to say that counsel may read a witness' prior statement from a transcript in framing a question and quite a different matter to say that the mere reading constitutes proof the statement actually was made. Once the witness denies or is unable to recall having made the prior inconsistent statement, the proper procedure . . . is to use another witness to prove the first witness had testified as reported in the transcript.[1]

Patterson v. Commonwealth, 222 Va. 612, 616–17, 283 S.E.2d 190, 193 (1981).

### III.

The Commonwealth contends that any error in the trial court's rulings was harmless. We do not agree. Although the record contains abundant evidence of Waller's guilt, the sufficiency of that proof is dependent upon Conway's and Clarke's credibility. Had Waller succeeded in impeaching Conway or Clarke and in raising a reservation as to the credibility of either, she might well have won an acquittal.

The judgment of the trial court is reversed and this case is remanded for further proceedings, if the Commonwealth be so advised.

---

[1]This appeal raises no question as to the authenticity of the transcript. Furthermore, authentication by a witness is no longer required. The transcript, if properly certified by the court reporter, is self-authenticating. See Code § 8.01-420.3.

<u>Reversed and remanded</u>.